AO 106 (Rev. 04/10)  Application for a Search Warrant

FILED

JUL 3 0 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No.  **1 9 M J 3 1 8 1**
NUU Mobile - IMEI#: 354700084614095 )
)
Samsung Galaxy S10 -IMEI#: 354418101874465 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324(a)(1)(A)(ii), (v)(I) | Transportation of Aliens for Financial Gain, and Conspiracy. |

The application is based on these facts:
See Affidavit of Emy J. Vega-Flores

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Emy J. Vega-Flores, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/30/19

City and state: San Diego, California

_____
*Judge's signature*

Hon. Linda Lopez, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A
PROPERTY / ITEMS TO BE SEARCHED

The property to be searched in connection with the investigation of violations of Title 8, United States Code, Section 1324 is described below and known together as the **Target Devices**:

> Cellular Telephone **("Target Device 1")**
> Make: NUU
> Model: Currently unknown
> IEMI: 354700084614095
> SIM #: Currently unknown

> Cellular Telephone **("Target Device 2")**
> Make: Samsung
> Model: Galaxy S10
> IEMI: 354418101874465
> SIM #: Currently unknown

**The Target Devices** are currently being held as evidence by the Department of Homeland Security in the Southern District of California at the Asset Forfeiture Office, located at 3752 Beyer Blvd., San Diego, CA 92173.

**ATTACHMENT B**
**EVIDENCE TO BE SEIZED**

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of June 25, 2019 to July 7, 2019.

The following evidence to be searched for and seized pertains to violations 8 U.S.C. § 1324 (Alien Smuggling):

1. Communications, records, or date including but not limited to emails, text messages, messaging applications, social networking sites, photographs, audio files, videos, or location data:

   a. tending to identify efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

   b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence and used to facilitate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

   d. tending to identify travel to or presence at locations involved in the smuggling of aliens into the United States from Mexico or transporting illegal aliens within the United States such as drop off and pick up locations, stash houses load houses, or delivery points;

   e. tending to indicate payment for the smuggling of aliens into the United States or the transportation of aliens within the United States;

f. tending to identify the user of, or persons with control over or access to, the subject phone; or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

**Which are evidence of violations of Title 8, United States Code, Section 1324.**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A SEARCH WARRANT

I, Emy J. Vega-Flores, United States Border Patrol Agent ("BPA") with the Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), having been duly sworn, depose and state as follows:

### INTRODUCTION

1.     This affidavit supports an application to search the following cellular telephones known together as the **Target Devices**:

> Cellular Telephone **("Target Device 1")**
> Make: NUU
> Model: Currently unknown
> IEMI: 354700084614095
> SIM #: Currently unknown

> Cellular Telephone **("Target Device 2")**
> Make: Samsung
> Model: Galaxy S10
> IEMI: 354418101874465
> SIM #: Currently unknown

2.     The purpose of the search warrant is to search and seize evidence of crimes, specifically violations of Title 8, United States Code § 1324, including Transportation of Certain Aliens and Conspiracy to do so, further described in Attachment B.

3.     The **Target Devices** are being held as evidence by the Department of Homeland Security in the Southern District of California, specifically the Asset Forfeiture Office, located at 3752 Beyer Blvd., San Diego, CA 92173.

4.     The following is based on my personal involvement in this investigation, oral and written reports about this investigation that I have received from federal law enforcement officers, physical surveillance conducted by law enforcement, whose observations have been reported to me either directly or indirectly, law enforcement records and intelligence checks, conversations with other law enforcement agents involved in this investigation, and my review of records obtained during this

investigation.  Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation.  I set forth only facts necessary to establish foundation for the requested warrant.  Dates and times are approximate.

## AGENT'S BACKGROUND AND EXPERIENCE

5.      I am a BPA with the United States Border Patrol ("USBP") within DHS. I have been employed as a BPA since July, 2007.  I am presently assigned to the Targeted Enforcement Unit ("TEU") at the Brown Field Border Patrol Station.  I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico.  I have received basic and advanced training in investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States.

6.      As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants.  As an Agent with the Border Patrol, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

7.      During my assignments, I have observed and recorded the movements of individuals illegally entering the United States, and of those suspected of smuggling illegal aliens into the United States.  I have interviewed defendants, witnesses and informants relative to their illegal entry and alien smuggling.  Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of illegal aliens and alien smugglers, with particular emphasis on those who attempt to illegally enter or smuggle illegal aliens into the United States from Mexico.

8.      Through the course of my training, investigations, work experience, and conversations with other law enforcement personnel, I am aware that it is a common

1  practice for alien smugglers to work in concert with other individuals, and they do so
2  by  utilizing  cellular  telephones,  pagers  and  portable  radios  to  maintain
3  communications with co-conspirators in order to further their criminal activities.  As a
4  part of TEU, I have seen numerous telephones being used by load drivers to
5  communicate with smugglers.  Typically, load drivers transporting aliens within the
6  United States are in telephonic contact with co-conspirators immediately prior to and
7  following the entry of illegal aliens into a load vehicle, at which time they receive
8  instructions on where and when to pick up the illegal aliens and where to deliver them.

9       9.     Based  upon  my  training  and  experience  as  a  Border  Patrol  Agent,
10  consultations  with  law  enforcement  officers  experienced  in  alien  smuggling
11  investigations, and all the facts and opinions set forth in this affidavit, I submit the
12  following:

13        a.  Alien smugglers will use cellular telephones and smart devices with
14             messaging  applications  because  they  are  mobile  and  they  have
15             instant access to telephone calls, social media application, and text
16             and voice messages;
17        b.  Alien  smugglers  will  use  cellular  telephones  and  smart  devices
18             because they are able to actively monitor the progress of their illegal
19             cargo while the conveyance is in transit;
20        c.  Alien smugglers and their accomplices will use cellular telephones
21             and smart devices because they can easily arrange and/or determine
22             what time their illegal cargo will arrive at predetermined locations;
23        d.  Alien smugglers will use cellular telephones and smart devices to
24             direct the alien smuggler drivers to synchronize an exact drop off
25             and/or pick up time of their illegal cargo;
26        e.  Alien smugglers will use cellular telephones and smart devices to
27             notify or warn their accomplices of law enforcement activity, and in
28             particular USBP enforcement activity, to include the presence and

posture of marked and unmarked units, as well as the operational status of USBP checkpoints; and

f.  Alien smugglers will often use cellular phones and smart devices to remotely guide illegal aliens who are crossing into the United States, providing them instructions as to where to go and what to do during a smuggling event. This is often done from over watch positions on high ground in Mexico or at the border fence. This allows smugglers to remotely control the actions of the smuggled aliens, while insulating themselves from criminal prosecution, which an alien smuggling foot guide who was physically present in the company of the aliens would be exposed to.

## FACTS SUPPORTING PROBABLE CAUSE

10. On July 5, 2019, a Border Patrol Agent was performing line watch duties in the Brown Field Border Patrol Station's area of responsibility in Tecate, California. The agent was in full Border Patrol rough duty uniform displaying U.S. Border Patrol Badge and patches.

11.  At approximately 10:45 p.m., the agent was driving his agency vehicle westbound on State Route 94. As the agent approached the intersection of Barrett Smith Road in Dulzura, California, the agent observed several individuals climbing into a red Dodge Caravan through the rear passenger side sliding door.

12.  The agent proceeded to drive behind the Dodge Caravan and it immediately began to drive westbound away from the intersection. As it drove away, the rear passenger sliding door was still open, and the agent witnessed approximately six to eight individuals jump out of the Dodge Caravan while it was still moving. The individuals ran northbound from State Route 94 into the heavy brush.

13.  The agent then activated his agency vehicle emergency lights to attempt a vehicle stop. The driver, later identified as GONZALEZ, Jose Manuel continued

4

1  driving westbound giving the agent the impression that he was not going to pull over.
2  GONZALEZ then parked his vehicle in the middle of the westbound lane of State Route
3  94. The agent exited his vehicle and approached GONZALEZ while identifying himself
4  as a Border Patrol Agent.

5      14.   The agent asked GONZALEZ to exit the vehicle and the agent escorted him
6  back to his service vehicle to place him in the rear holding area. After securing
7  GONZALEZ, the agent walked back to the van to see if anyone else was still in the
8  vehicle. While searching the Dodge Caravan, the agent encountered another individual
9  laying on the floor of the rear passenger area which had no seats or seat belts.

10      15.   The agent identified himself as a Border Patrol Agent and questioned the
11  individual, who was later identified as OCHOA-Ramirez, Enrique, as to his citizenship,
12  nationality, and asked if he had any documents that would allow him to legally enter or
13  remain in the United States. OCHOA freely admitted to being a citizen and national of
14  Mexico, not in possession of any legal immigration documents.

15      16.   Other Border Patrol Agents responded to the area and with the assistance
16  of an agency canine and scope operator began a search for the individuals who ran away
17  from the Dodge Caravan. Agents found four of the individuals. These individuals were
18  later identified as GARCIA-Beltran, Citlali, LAGUNAS-Meza, Juan Ramon,
19  CAMPISTA-Ramirez, Nicodemo, and LOPEZ-Camacho, Teresa. These individuals
20  also admitted they were citizens of Mexico with no right or permission to enter the
21  United States. GONZALEZ and the five individuals were placed under arrest.

22      17.   On July 6, 2019, at 9:00 a.m., GARCIA-Beltran, Citlali provided a
23  videotaped sworn statement as a material witness. GARCIA stated she made
24  arrangements with a contact in Tijuana, Mexico to be smuggled into the United States
25  for $8,000 United States Dollars. OCHOA stated she was given information for this
26  contact from a taxi driver a year ago. GARCIA stated she, four other individuals and
27  two foot guides climbed over the "lamina" (flat panel) border fence and walked north
28  into the United States. GARCIA stated they walked until they reached a road, crossed

it and hid in a ditch on the other side. GARCIA stated a van later arrived and the foot guides yelled at the group to get in. GARCIA stated as soon as all members of the group were inside the van, they saw lights from a Border Patrol vehicle and were told to run. GARCIA stated she and others ran from the car and were later apprehended by Border Patrol Agents. GARCIA stated she did not know if the driver of the vehicle was arrested with her because she ran when they were pulled over by Border Patrol.

18. On July 6, 2019, at 11:43 a.m., LOPEZ-Camacho, Teresa provided a videotaped sworn statement as a material witness. LOPEZ stated she made arrangements with a contact in Tijuana, Mexico to be smuggled to Los Angeles, California for $7,500 United States Dollars. LOPEZ stated she was met at the airport in Tijuana, Mexico and driven to a hotel in Tecate, Mexico by an unknown individual, as part of her arrangements. After about two days at the hotel, LOPEZ was picked up by a man called "Manuel" and driven to a location near the border fence where she met up with the rest of the group. LOPEZ stated she and seven other people climbed over the "lamina" (flat panel) border fence and walked north into the United States. LOPEZ stated they walked until they reached a road. Once there LOPEZ and the other members of the group crossed over the road and walked further. LOPEZ stated they waited for about an hour to be picked up. LOPEZ stated she and the others were picked up by a car and drove for less than five minutes before border patrol caught them. LOPEZ stated as soon as the car stopped she heard someone yelling to run. LOPEZ stated she and others ran from the car and were later apprehended by Border Patrol Agents.

19. On July 6, 2019, at 1:15 p.m., LAGUNAS-Meza, Juan Ramon provided a videotaped sworn statement as a material witness. LAGUNAS stated he made arrangements with an unknown contact to be smuggled into the United States for $8,000 United States Dollars. LAGUNAS stated he made these arrangements via telephone with a phone number a friend gave him. LAGUNAS stated he was directed to go to a stash house in Tecate, Mexico. LAGUNAS stated there were all male members of the group at the stash house. LAGUNAS stated he and the others were picked up and driven

to the border fence where he met up with the two female members of the group. LAGUNAS stated he made his entry with nine other individuals and followed one foot guide north into the United States.  LAGUNAS stated the group walked until they reached a road.  Once there, LAGUNAS and the other members of the group were told to hide and wait by the foot guide. LAGUNAS stated a car pulled over and the group was told by the foot guide to get in.  LAGUNAS stated he was attempting to enter the car when Border Patrol pulled up behind them.  LAGUNAS stated he saw others in the group exit the car and run away.

     20.   On July 6, 2019, at 9:52 a.m., CAMPISTA-Ramirez, Nicodemo provided a videotaped sworn statement as a material witness. CAMPISTA stated he made arrangements with a man under the moniker "Juan" or "Johny" in Tecate, Mexico to be smuggled into the United States for $8,000 United States Dollars. CAMPISTA stated he lives near "Juan" in Tecate, Mexico. CAMPISTA stated he made his arrangements the same day he crossed.  CAMPISTA stated he and the entire group met up near Colinas Del Cuchuma, Tecate and climbed over the "lamina" (flat panel) border fence and walked north.  CAMPISTA stated they walked for one day until reaching State Route 94. CAMPISTA stated they crossed State Route 94 and walked west to Barrett Smith Road in a canyon.  CAMPISTA stated they stopped and hid in some tall trees once they were near the intersection of Barret Smith Road and State Route 94.  While they waited, CAMPISTA heard the foot guides climb up a hill away from the road. CAMPISTA stated after a few hours the foot guides came back and directed the group to move closer to the road.  Soon after, a dark colored car pulled over near them and the foot guides yelled at the group to get in. CAMPISTA stated they got into the car and were pulled over by Border Patrol moments after.   As they were pulled over, CAMPISTA saw one of their foot guides open the door and run.  CAMPISTA stated after seeing this he and other members of the group ran as well. CAMPISTA stated he was apprehended after running for only a short time.

21. Incident to his arrest, the **Target Devices** were found on GONZALEZ' person and seized, among other personal effects on July 5, 2019.

22. On July 6, 2019, GONZALEZ was charged with Transportation of Aliens for Financial Gain, and Aiding and Abetting, in violation of Title 8, United States Code, § 1324(a)(1)(A)(ii), in the Southern District of California, Case No. 19-MJ-2830.

23.    Based upon my experience and investigation in this case, I believe that, the individuals named above as well as other persons as yet unknown, were involved in an on-going conspiracy in alien smuggling from Mexico into the United States.  Based on my experience investigating alien smugglers, I also believe there is probable cause GONZALEZ used the **Target Devices** to coordinate with co-conspirators regarding, and in furtherance of, the smuggling of aliens, and to otherwise further this conspiracy both inside and outside the United States.  I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, location data, messages and posts from social networking sites like Facebook, messaging applications such as "WhatsApp," and pictures and other digital information are stored in the memory of cellular telephones and smart devices which identify other persons involved in alien smuggling and illegal entry activities.

24.    Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling activities, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, location data, email messages, messages and posts from social networking sites like Facebook, messaging applications such as "WhatsApp," and pictures and other digital information are stored in the memory of the **Target Devices** described herein.

25.    Finally, I am aware that alien traffickers require detailed and intricate planning to successfully evade detection by law enforcement.  In my professional

training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as GONZALEZ will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks, months, and years longer than they claimed to be involved. Given those facts, I respectfully request permission to search the **Target Devices** for data beginning on June 25, 2019, up to and including July 7, 2019.

## SEARCH METHODOLOGY

26.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to

such acquisition, the examiner must examine the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** telephone and its memory cards, call detail records, and deleted files will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

29. Based on the facts contained in this affidavit and my experience and training, I submit there is probable cause to believe that the **Target Devices** contain evidence of violations of Title 8, United States Code Section 1324. Consequently, based on the probable cause discussed above, I specifically request authority to search the items described above and in listed Attachment A and seize the items listed in Attachment B.

Emy J. Vega-Flores
Border Patrol Agent

SUBSCRIBED AND SWORN TO BEFORE ME THIS _30_ DAY OF JULY 2019.

HONORABLE LINDA LOPEZ
United States Magistrate Judge

10